RONALE ROBERSON AND PAMELA ROBERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roberson v. Commissioner
Docket No. 39223-87
United States Tax Court
T.C. Memo 1990-643; 1990 Tax Ct. Memo LEXIS 718; 60 T.C.M. (CCH) 1486; T.C.M. (RIA) 90643; December 20, 1990, Filed *718 Decision will be entered under Rule 155. Curtis Darling, for the petitioners. *719 Peter D. Bakutes and Alison W. Lehr, for the respondent. SWIFT, Judge. SWIFT
*2128 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to tax in petitioners' joint Federal income tax, as follows: Additions to Tax, Secs. [1]
Year
Deficiency
6651
6653(a)(1)
6653(a)(2)
6661 1983
$ 95,153
$ 33,099
$ 8,170
*
$ 15,146
1984
87,906
27,008
6,752
*
19,582
1985
85,007
0   4,250
*
16,723
After settlement of some issues, the issues for decision are: (1) Whether petitioners should be taxed on a 1984 sale of real property; (2) whether petitioners may deduct certain travel expenses under section 162(a)(2); and (3) whether petitioners are liable for additions to tax under sections 6653(a)(1) and (2) and 6661. *720 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Pamela and Ronale Roberson were married and filed joint Federal income tax returns for the years at issue. At the time they filed their petition, petitioners resided in Bakersfield, California. Sale of Real Property
Petitioners have been engaged in a construction business for many years, specializing in the construction of residential homes. In years prior to 1980, the business was operated generally in partnership with Wayne and Evelyn Vaughn *2129 (the Vaughns), who are petitioner Pamela Roberson's parents. From 1983 through 1985, the business was operated generally by petitioners as a sole proprietorship under the name of Ron Roberson Builders. Sometime prior to September of 1982, petitioners purchased a parcel of unimproved real property located at 1100 Calle Extrano, Bakersfield, California. Petitioners obtained a $ 220,000 construction loan and built a house on this property (hereinafter, the house and property will be referred to as Calle Extrano). After completing the house on September 1, 1982, petitioners offered to sell Calle Extrano for $ 295,000. The parties have stipulated *721 that Calle Extrano was held by petitioners as inventory property and that it was offered for sale in the normal course of their construction business. In January or February of 1983, petitioners allegedly entered into a joint venture with the Vaughns to develop 30 lots on a parcel of real property referred to as tract #3907 which had a value of $ 126,850. Petitioners and the Vaughns each were to contribute property to the joint venture with a value of $ 63,425. The Vaughns were to contribute to the joint venture tract #3907, which contribution (after the adjustments and credits mentioned below between petitioners and the Vaughns) apparently would represent a net contribution by the Vaughns to the joint venture of $ 63,425. Petitioners' contribution to the joint venture was to occur through a related transaction between petitioners and the Vaughns involving Calle Extrano. The Vaughns were to purchase Calle Extrano from petitioners for $ 282,080. The Vaughns were to pay the $ 282,080 purchase price by assuming the $ 220,000 construction loan relating to Calle Extrano and by giving petitioners a $ 62,080 credit toward petitioners' obligation to the joint venture (i.e., by treating *722 petitioners as if petitioners had then paid the $ 62,080 to the joint venture, and by treating the joint venture as if it had then paid that amount to the Vaughns). Neither the existence nor terms of the alleged joint venture with respect to the proposed development of tract #3907, nor with respect to the alleged 1983 sale of Calle Extrano by petitioners to the Vaughns are reflected by any written agreements or documents in evidence in this case. In early 1983 the Vaughns moved into the Calle Extrano home. They stayed in the home for only a few weeks, during which they apparently made a payment on the construction loan and Wayne Vaughn made improvements to the property at a cost to him of $ 27,744. In March or April of 1983, Wayne Vaughn indicated to petitioners that he had decided not to purchase Calle Extrano, and petitioners indicated to the Vaughns that they would be interested in purchasing from the Vaughns all of tract #3907. Apparently for the latter purpose, petitioners borrowed $ 91,407 from Evelyn Vaugh. Petitioners then, on April 18, 1983, paid a total of $ 156,014 to Wayne Vaughn representing the $ 126,850 value of tract #3907 and reimbursement of the $ 27,744 *723 cost of improvements and of other miscellaneous expenses Wayne Vaughn had incurred in connection with Calle Extrano. It apparently was understood that petitioners would repay the $ 91,407 loan they obtained from Evelyn Vaughn out of proceeds of a subsequent sale of Calle Extrano. During all of 1983, petitioners held title to Calle Extrano. No written documents were executed purporting to transfer title or ownership of Calle Extrano to the Vaughns. No escrow was entered into for the sale of Calle Extrano to the Vaughns. The bank was not notified of any intention on the part of the Vaughns to assume the construction loan on the Calle Extrano property, and the property tax records reflect no change in the ownership of Calle Extrano. Sometime after the Vaughns moved out of Calle Extrano, petitioners again listed Calle Extrano for sale. After approximately one year, on March 22, 1984, Leonard and Janet Parsons (the Parsons) made a written offer to purchase the property from petitioners that, after negotiations, was accepted by petitioners. Title to Calle Extrano passed from petitioners to the Parsons on April 18, 1984. The sale price less expenses was $ 314,404. Petitioners *724 received net cash proceeds of $ 73,391 and a second mortgage of $ 15,000. Petitioners' cost basis in Calle Extrano at that point was $ 253,913. In a related transaction, petitioners purchased the Parsons' former residence known as "Saddleback," at apparently fair market value. On April 24, 1984, petitioners repaid Evelyn Vaughn $ 67,460 of the $ 91,407 they had borrowed from her in 1983. On October 15, 1984, petitioners sold the Saddleback property. Both the sale of Calle Extrano and the sale of Saddleback were reflected on petitioners' records relating to their real estate development and construction business for 1984. Evelyn Vaughn died on March 21, 1985. Sometime after her death, the $ 15,000 second mortgage held by petitioners relating to the sale of Calle Extrano was paid off by the Parsons. The proceeds therefrom were paid by petitioners to Evelyn Vaughn's estate in further repayment *2130 of the loan petitioners had received from Evelyn Vaughn. Travel Expenses
In September of 1983, petitioners took a family vacation and visited relatives in Oklahoma. While in Oklahoma, they purchased a hay farm. In June of 1985, petitioners sold their family residence *725 in California and moved to the hay farm in Oklahoma, even though they intended to continue operating their construction business in California while at the same time living in Oklahoma. Respondent concedes that the Oklahoma hay farm was a bona fide business with economic substance. However, during 1985 the construction business in California produced substantially all of petitioners' income. In December of 1985, due to the unprofitability of the hay farm and the high cost of operating a business in California while living in Oklahoma, petitioners moved back to California and terminated the hay farm operation as a business. During the six months petitioners lived in Oklahoma, they made several trips to California relating to the construction business, and they incurred in connection therewith expenses for transportation, meals, and lodging totaling $ 4,124. As of the date of trial, petitioners continue to own the Oklahoma hay farm property. Petitioners' Federal income tax returns for the years in issue were prepared by their accountant. Petitioners acknowledge that they hastily filed their Federal income tax returns for the years in issue without reading or reviewing the returns. *726 Petitioners did not report any sale of Calle Extrano on their 1983 or their 1984 Federal income tax returns, and petitioners claimed on their 1985 Federal income tax return $ 4,417 as deductible business travel expenses relating to their trips to California from Oklahoma. Evelyn Vaughn's Federal income tax return for 1984 reported the sale of Calle Extrano as a long-term capital gain. By statutory notice, respondent determined that petitioners should have reported the gains from the sale of Calle Extrano on their 1984 Federal income tax return. Respondent also disallowed the entire $ 4,417 claimed by petitioners for travel expenses on their 1985 Federal income tax return, and respondent imposed additions to tax under sections 6651, 6653, and 6661. OPINION Sale of Calle Extrano
For purposes of Federal income taxation, gain or loss from the sale of property is attributable to the owner of the property at the time of the sale. See ; . This ownership question is generally controlled by who the owner of the property was just prior to the sale *727 in question (i.e., who, prior to the sale, had the benefits and burdens associated with ownership of the property). , revd. on another issue ; . Petitioners contend that they sold Calle Extrano to the Vaughns in January or February of 1983 in exchange for a one-half interest in the joint venture relating to tract #3907. Petitioners also contend that on April 18, 1983, when they gave Wayne Vaughn the $ 91,407 check, they were acting as undisclosed agents for Evelyn Vaughn and that she at that time purchased Wayne Vaughn's share of Calle Extrano, making Evelyn the sole owner. Petitioners thus contend that Evelyn Vaughn was the owner of Calle Extrano when it was sold to the Parsons in 1984, and therefore that the gain associated with the 1984 sale should not be charged to them. Respondent contends that no sale of Calle Extrano took place in 1983 and that petitioners were the sole owners of Calle Extrano in 1984 when it was sold and title was transferred to the Parsons. Respondent contends *728 that petitioners were in control of the transaction and now must accept the consequences of the form and structure they chose, regardless of their wish to change the tax consequences. Taxpayers bear a heavy burden when they seek to set aside the form of a transaction they themselves structured. ; . Too many facts indicate that petitioners still owned Calle Extrano at the time of the 1984 sale to the Parsons to accept petitioners' explanation of these transactions. Title to Calle Extrano remained in petitioners' names during 1983 and 1984 right up until the 1984 sale. The purported 1983 sale to the Vaughns was not documented in any way, nor was it disclosed to the mortgage holder. No sale was reported, nor was any gain relating thereto reported on petitioners' Federal income tax return for 1983. Also, petitioners' own real estate records do not reflect a 1983 sale of Calle Extrano but do reflect that petitioners sold Calle Extrano to the Parsons in 1984. Petitioners, throughout most of 1983 and 1984 until the date of the sale to the Parsons, bore essentially *729 all of the burdens of ownership of Calle Extrano, while the Vaughns had none of the benefits of ownership of Calle Extrano, other *2131 than living in Calle Extrano a few weeks in 1983. We hold that petitioners were the owners of Calle Extrano on April 18, 1984, when it was sold to the Parsons and accordingly that petitioners are to be taxed on the gain associated with that sale. Travel Expense Deduction
Section 162(a)(2), in general, allows deductions for ordinary and necessary travel expenses incurred in a trade or business. As we have stated: a taxpayer may have more than one occupation or business, and * * * where it is shown that the taxpayer has two occupations which require him to spend a substantial amount of time in each of two cities, he is entitled to the deduction of traveling and other ordinary and necessary business expenses incurred in connection with attendance upon the one removed from his residence. [.]
Petitioners contend that their trips in the summer and fall of 1985 between Oklahoma (the location of their residence and their hay farm business) and California *730 (the location of their construction business) were necessary for the operation of the construction business and therefore that the related expenses are deductible. Respondent contends that such trips were made for nonbusiness purposes such as visiting family or vacationing and therefore are nondeductible personal expenses. We have found that petitioners were engaged in two businesses and that the travel expenses at issue were incurred for business-related trips between the two businesses. The $ 4,124 in travel expenses that has been substantiated is allowed as a deduction under section 162(a)(2). Additions to Tax
Respondent determined that petitioners were liable under section 6653(a)(1) and (2) for additions to tax due to negligence on the entire underpayment for all three years at issue. Negligence, for purposes of section 6653(a), has been defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. ; ; . *731 The burden of proof is upon petitioners to show that respondent's determination of additions to tax for negligence is incorrect. ; . Petitioners testified that they did not review or even read their tax returns. The audit adjustments made on petitioners' income tax returns for 1983, 1984, and 1985 were numerous, ranging from the omitted gain on the sale of Calle Extrano to the disallowance of claimed gambling losses and charitable contributions. In 1983, six separate adjustments were made resulting in a $ 40,301 increase in taxable income. In 1984, eight adjustments were made resulting in a $ 133,318 increase in taxable income, and in 1985 seven adjustments were made resulting in a $ 99,214 increase in taxable income. Due to the nature, number, and amount of the adjustments, combined with petitioners' failure to make any effort to review their tax returns, and the absence of any other sufficiently mitigating circumstances, we find no basis for relieving petitioners from liability for the additions to tax under section 6653(a)(1) and (2). Substantial *732 Understatement
Section 6661 imposes an addition to tax if there is a substantial understatement of income tax equal to 25 percent of the amount of the underpayment attributable to the understatement. The addition to tax may be reduced to the extent the taxpayer adequately disclosed or had substantial authority for the position taken on the return. An understatement is substantial if it exceeds the greater of 10 percent of the amount required to be shown on the taxpayer's return or $ 5,000. Because petitioners failed to adequately disclose or to show that they had substantial authority for their tax return positions, they are liable for the additions to tax under section 6661 for those years in which the understatement exceeded the specified amount. Petitioners' other arguments were considered and found to be without merit. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue.↩
*. 50 percent of the interest attributable to the portion of the underpayment that is due to negligence or intentional disregard of the rules and regulations.↩